IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ELMER G. (PETE) MILLER, | : | Case No. 1:17-cv-198 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | **ORDER GRANTING SUMMARY** |
| | : | **JUDGMENT ON PLAINTIFF'S** |
| PIPE AND PLANT SOLUTIONS, INC., | : | **CLAIMS, DENYING SUMMARY** |
| *et al.*, | : | **JUDGMENT ON DEFENDANTS'** |
| | : | **COUNTERCLAIMS, AND DENYING** |
| Defendants. | : | **PLAINTIFF'S MOTION** |

This matter is before the Court on Defendants' Motion for Summary Judgment on All Claims in Complaint and for Partial Summary Judgment on Counts I and IV of the Counterclaim (Doc. 17) and Plaintiff's Motion for Partial Summary Judgment as to Count I of his Complaint (Doc. 31). Appropriate responses and replies have been filed (Docs. 33, 34, 35, and 36). For the reasons that follow, Defendant's Motion will be **GRANTED** as to Plaintiff's claims but **DENIED** as to Counts I and IV of the counterclaim. Plaintiffs' Motion will be **DENIED**.

**I.   BACKGROUND**

**A. Facts**

Defendant Pipe and Plant Solutions, Inc. ("PPSI") operates a waste water maintenance and cleaning business from its offices in California and New York. Two of PPSI's owners, William Gilmartin IV and Corbin Marr, actively operate PPSI. (Marr Dec., Doc. 17-2 at PageID 153.) PPSI has overlapping ownership with Defendant Pro Ven Management, Inc. ("Pro Ven"), a general and civil engineering construction company.

Pro Ven hired Plaintiff Elmer "Pete" Miller as a consultant in 2013. As PPSI began to grow, Gilmartin and Marr joined others in deciding to hire Miller as PPSI's Director of Sales.

1

(*Id.* at PageID 154.) Miller was 56 years old at that time, and he would work from his home office in Terrace Park, Ohio. (*Id.*)

The parties entered into a formal employment contract, effective March 3, 2014. The contract provides in part:

**EMPLOYMENT AGREEMENT**
* * *

> C. Pete Miller is an at will employee of PPSI. Either party is able to terminate the employment agreement at any time.
>
> * * *
>
> **15. TERMINATION.** Pete Miller's employment under this Agreement shall be for a 5 year term on an "at will" basis. This Agreement may be terminated by PPSI upon Two Weeks written notice, and by Pete Miller upon Two Weeks written notice. If PPSI shall so terminate this Agreement, Pete Miller shall be entitled to compensation for four weeks beyond the termination date of such termination, unless Pete Miller is in violation of this Agreement. If Pete Miller is in violation of this Agreement, PPSI may terminate employment without notice and with compensation to Pete Miller only to the date of such termination. The compensation paid under this Agreement shall be Pete Miller's exclusive remedy.
>
> * * *
>
> **18. RETURN OF PROPERTY.** Upon termination of this Agreement, Pete Miller shall deliver to PPSI all property which is PPSI's property or related to PPSI's business (including keys, records, notes, data, memoranda, models, and equipment) that is in Pete Miller's possession or under Pete Miller's control. Such obligation shall be governed by any separate confidentiality or proprietary rights agreement signed by Pete Miller.
>
> * * *
>
> **20. ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties.

(Employment Agreement, Doc. 1-2 at PageID 12–16.) Miller testified that PPSI provided the Employment Agreement to which he made changes. Specifically, Miller inserted into paragraph 15 the language "for a 5 year term." (Miller Dep., Doc. 26 at PageID 227.) However, he made

no changes to the "on an at-will basis" in the same sentence. (*Id.*) In addition, Miller made no changes to paragraph "C" where it identified him as "an at-will employee." (*Id.*) He added the "for a 5 year term" language to paragraph 15 because PPSI was a start-up company, and Gilmartin agreed to a commission plan scheduled to begin in three years. Miller "told Mr. Gilmartin in verbal communications that [he] would not agree to wait three years for commissions to be paid unless [he] had a five-year contract with them." (*Id.* at PageID 228.) Miller further testified that he did not consult an attorney before making his edits to or signing the Employment Agreement. (*Id.*) He is not sure what "at-will" or "exclusive remedy" mean. (*Id.*)

Two years later, PPSI and Miller agreed to an Employee Bonus Plan. The Bonus Plan provides, in part:

> 3. Bonus Pool
> Each year the Company will contribute 3% of its net profits gained by the sales generated specifically by Pete Miller to the Bonus Pool created by this Plan.
>
> \* \* \*
>
> 5. Termination of Employment
> This plan does not create a contract of employment between the Company and any employee. This Plan does not limit the right of the Company to discharge or terminate an employee for any reason, or for no reason.

(Doc. 1-2 at PageID 17.) Directly above his signature dated May 25, 2016, Miller indicated that he read and understood the Bonus Plan. (*Id.* at PageID 18.)

On January 13, 2017, PPSI paid Miller $26,000 pursuant to the Bonus Plan. (*Id.* at PageID 257–58.) Approximately one week later, Miller was told that his position was being eliminated. (*Id.* at PageID 261.) Miller was 59 years old at the time his employment was terminated. (Doc. 17-2 at PageID 154.)

3

Prior to his termination, Miller experienced technical problems with his work-related computer. (Doc. 26 at PageID 258–60.) He was told to access PPSI-provided computer support, but he believed that individual was in either New York or California. (*Id.* at PageID 260.) Sometime in early January, 2017, Miller's work computer became completely inoperable so he stopped using it. (*Id.* at PageID 269–70.)

Miller attempted to "be a nice guy" by having his work-related computer repaired before returning it to PPSI. (*Id.* at PageID 269.) He called the PPSI computer staff members, but he did not receive a return call so he took the computer to Best Buy for repair as he believed the warranty period was nearing its end. (*Id.* at PageID 271.) He took the computer to Best Buy on January 25, 2017. (*Id.* at PageID 274.) When Miller retrieved the repaired computer from Best Buy, it had been wiped clean. (*Id.* at PageID 271–72.) He understood that the computer had a virus and Best Buy had to "clean everything off of it" to make it operable. (*Id.* at 272.) Miller noted that he removed Windows 10 and PowerPoint from the computer before returning it to PPSI because the software belonged to him, personally. (*Id.*) Miller also removed personal numbers and photographs from his cell phone before returning it to PPSI. (*Id.* at PageID 268.)

**B. Procedural Posture**

Plaintiff initiated this action alleging claims for breach of the employment contract (Count I), breach of the Bonus Plan (Count II), unjust enrichment (Count III), bad faith breach of contract (Count IV), and age discrimination in violation of Ohio Revised Code §§ 4112.14 and 4112.99 (Count VI).[1] Defendants filed counterclaims alleging breach of contract (Counterclaim Count I), restitution (Counterclaim Count II), tortious interference with business relationships

---

[1] Plaintiff also requested an equitable accounting for transactions relevant to the compensation and bonuses allegedly owed to him (Count V).

(Counterclaim Count III), breach of duty of loyalty (Counterclaim Count IV), and damage to personal property (Counterclaim Count V).

On May, 15, 2017, Defendants filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), claiming, in part, that the parties contractually agreed that Miller was an at-will employee. (Doc. 3.) Plaintiff opposed the motion on the basis that California Labor Code § 2924 applied to the contract because it was for a specified term of five years, and, therefore, Miller could not be terminated except for willful breach of duty, habitual neglect of duty, or incapacity to perform. (Doc. 6.)

This Court granted in part and denied in part Defendants' Rule 12(c) motion. Specifically, the Court noted its obligation to "to take Plaintiff's allegations as true in adjudicating" a motion for judgment on the pleadings and concluded that the contract here contains both an express five-year term and an express at-will provision and thus "presents a patent ambiguity that is not suited to judgment on the pleadings." (Doc. 10 at PageID 92, n. 7.) Accordingly, the Court denied Defendants' Rule 12(c) motion as to Plaintiff's breach of contract claim. However, the Court granted Defendants' motion to dismiss Plaintiff's claim for unjust enrichment because neither Ohio nor California law recognizes unjust enrichment where an express, written contract exists between the parties. (*Id.* at PageID 93.)

Defendants now move for summary judgment on Plaintiff's remaining claims and for partial summary judgment on Defendants' counterclaims for breach of contract (Counterclaim Count I) and breach of duty of loyalty (Counterclaim Count IV). (Doc. 17.) Plaintiff opposes Defendants' motion and filed a cross-motion for partial summary judgment on Plaintiff's claim for breach of the employment contract (Complaint Count I). (Doc. 31.)

## II. APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to show that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added); *see also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (*en banc*) (quoting *Scott*). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) ("A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party.") (emphasis in original) (citation omitted). Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at

248. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law." *In re Morgeson*, 371 B.R. 798, 800–01 (B.A.P. 6th Cir. 2007).

## III. ANALYSIS

In their motion for summary judgment on Plaintiff's remaining claims, Defendants contend that Miller was an at-will employee they properly terminated when his position was eliminated. In their motion for partial summary judgment on their counterclaims, Defendants allege that Miller purposely wiped all data from his company computer and phone after his termination.

In his cross-motion for partial summary judgment, Plaintiff contends that Miller was employed for a five-year term and Defendants terminated his employment without cause before the five-year term expired. In opposing Defendants' motion for partial summary judgment on their counterclaims, Miller argues that he did not remove data from his computer's hard drive before he returned the computer to Defendants, nor would he know how to do so. The Court will address each argument separately.

### A. Cross-Motions for Summary Judgment on Plaintiff's Breach of the Employment Contract Claim

The facts related to the employment contract are largely undisputed. Miller worked as a consultant for Pro Ven, and PPSI wanted Miller to serve as its Director of Sales. PPSI presented to Miller a multi-page written employment contract, expressly stating that Miller's employment

7

was "at will" and "[e]ither party is able to terminate the employment agreement at any time." (Doc. 1-2 at PageID 12; Miller Dep., Doc. 26 at PageID 227.) In PPSI's original draft, Section 15, "Termination," provided, "Pete Miller's employment under this Agreement shall be on an 'at will' basis." (Doc. 26 at PageID 227.) Miller inserted the phrase "for a 5 year term" into that sentence but did not remove any of the "at will" language. (*Id.*) Miller did not change Section C of the contract stating that his employment was "at will" and "[e]ither party is able to terminate the employment agreement at any time." (*Id.*) Miller did, however, insert language requiring PPSI to compensate him for four weeks beyond any termination, unless he was in violation of the Employment Agreement. (*Id.* at PageID 228.) Miller then returned the draft agreement with his changes to PPSI co-owner Billy Gilmartin without ever consulting an attorney regarding the employment contract or his changes to it. (*Id.* at PageID 228–29.)

After some discussion between Miller and Gilmartin, the parties signed the Employment Agreement, which provided, in part:

> C. Pete Miller is an at will employee of PPSI. Either party is able to terminate the employment agreement at any time.
>
> \* \* \*
>
> **15. TERMINATION.** Pete Miller's employment under this Agreement shall be for a 5 year term on an "at will" basis. This Agreement may be terminated by PPSI upon Two Weeks written notice, and by Pete Miller upon Two Weeks written notice. If PPSI shall so terminate this Agreement, Pete Miller shall be entitled to compensation for four weeks beyond the termination date of such termination, unless Pete Miller is in violation of this Agreement. If Pete Miller is in violation of this Agreement, PPSI may terminate employment without notice and with compensation to Pete Miller only to the date of such termination. The compensation paid under this Agreement shall be Pete Miller's exclusive remedy.

(Employment Agreement, Doc. 1-2 at PageID 12, 14; Doc. 26 at PageID 229.)

8

The parties agree that California Law governs the employment contract. Plaintiff alleges that the employment contract is for a fixed five-year term so California Labor Code § 2924 applies. Section 2924 provides:

> An employment for a specified term may be terminated at any time by the employer in case of any willful breach of duty by the employee in the course of his employment, or in the case of his habitual neglect of his duty or continued incapacity to perform it.

Plaintiff contends that because he was not terminated for any of these specified reasons, Defendants must compensate him for the time remaining on the five-year term.

Defendants disagree. They contend that § 2924 has no application here because Miller was an employee at-will and could be terminated for any reason, including the business decision to eliminate his position.

The Court concludes—as it did last year in addressing the Defendants' motion for judgment on the pleadings—that the contract language is patently ambiguous. The employment contract specifically states that "Miller's employment under this Agreement shall be for a 5 year term on an 'at will' basis." (Doc. 1-2 at PageID 14.)

Pursuant to the California Civil Code, "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal. Civ. Code § 1654; *see Juarez v. Wash Depot Holdings, Inc.*, 24 Cal. App. 5th 1197, 1203, 235 Cal. Rptr. 3d 250, 254–55 (2018) ("[W]here. . . the written agreement has been prepared entirely by the employer, it is a 'well established rule of construction' that any ambiguities must be construed against the drafting employer and in favor of the nondrafting employee.") (quoting *Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 248, 205 Cal. Rptr.3d 359 (2016)).

In the case at bar, PPSI drafted the original contract calling exclusively for an at-will employment relationship in which either party could terminate the employment relationship at any time. It was Plaintiff Miller who created the ambiguity by inserting the five-year term language without removing any of several references to "at-will employment" or the "[e]ither party is able to terminate the employment agreement at any time" language. (Miller Dep., Doc. 26 at PageID 227.) Thus, under applicable California law, the ambiguity must be construed against Miller, the party who created the ambiguity. *See* Cal. Civ. Code § 1654.

Miller alleges that he intended to create a five-year fixed term of employment (Doc. 26 at PageID 227), but the evidence indicates otherwise. First, Miller inserted the language requiring that PPSI compensate him for four weeks after PPSI terminates the Employment Agreement **unless Miller is in violation of the Employment Agreement**. (Miller Dep., Doc. 26 at PageID 227.) If Miller violates the Employment Agreement, the Employment Agreement provides that he can be terminated without notice or compensation. (Doc. 1-2 at PageID 14.) Thus, the plain language he not only read but edited contemplates the scenario in which PPSI could terminate the agreement even if Miller did not violate the Employment Agreement.

Second, while significant email correspondence is contained in the record, Plaintiff has not identified a single email or document supporting his contention that the parties intended to enter into a fixed-term employment arrangement. In fact, no employee has a fixed term employment arrangement with PPSI, including Gilmartin and Marr. (Marr Dec., Doc. 17-2 at PageID 154.)

Third, the Employment Agreement provides in a simple, one-sentence paragraph, "This Agreement may be modified or amended, if the amendment is made in writing and is signed by both parties." (Doc. 1-2 at PageID 15.) Two years after executing the Employment Agreement,

Miller and Gilmartin (as PPSI President) entered into a second agreement, the Employee Bonus Plan. The slightly more than one-page Employee Bonus Plan agreement states:

> 5. Termination of Employment
> This Plan does not create a contract of employment between the Company and any employee. This plan does not limit the right of the Company to discharge or terminate an employee for any reason, or for no reason.

(Doc. 1-2 at PageID 17.) Thus, even if Miller had a fixed-term employment agreement with PPSI, entering into the Employee Bonus Plan in 2016 eliminated that arrangement.

Finally, this is not a case involving an employee-created adhesion contract to which a powerless employee must agree or be unemployed. Miller, a well-paid executive, successfully negotiated multiple changes to the Employment Agreement, the Bonus Plan, and the project list to which the Bonus Plan applied. (Miller Dep., Doc. 26 at PageID 227–29, 247–48, 250–52.) Thus, he is fairly bound to the agreement he negotiated and executed. The Court concludes that Miller was an employee at-will pursuant to the terms of the Employment Agreement and Bonus Plan. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's claim for breach of the Employment Agreement must be granted. Plaintiff's Motion for Partial Summary Judgment on that same claim must be denied.

**B. Defendants' Motion for Summary Judgment on Plaintiff's Claim for Breach of the Bonus Plan**

In responding to the Defendants' summary judgment motion, Miller clarifies that his breach of Bonus Plain claim is based on the bonuses he would have earned had Defendants employed him for the remainder of the five-year term. (Doc. 34 at PageID 458–59.) Because the Court concluded that Miller was employed at will rather than for a five-year term, Miller's

breach of Bonus Plan claim also must fail. Accordingly, Defendants' Motion for Summary Judgment is granted as to Plaintiff's claim for breach of the Bonus Plan.

**C. Defendants' Motion for Summary Judgment on Plaintiff's Age Discrimination Claim**

Ohio law prohibits employment discrimination on the basis of age against an employee who is at least 40 years old. Ohio Rev. Code § 4112.02(A). Ohio's age discrimination statute parallels the federal Age Discrimination in Employment Act, 29 U.S.C. § 623(a). *See Whitt v. Lockheed Martin Utility Serv., Inc.*, 209 F. Supp. 2d 787, 792 (S.D. Ohio 2002); *Plumbers & Steamfitters Jt. Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 421 N.E.2d 128, 131 (1981).

To make a *prima facie* case of age discrimination, a plaintiff must establish the four elements of the well-known *McDonnell Douglas* burden-shifting framework: (1) that he was a member of a protected class; (2) that he was qualified for the position; (3) that he suffered an adverse employment action; and (4) that he was replaced by someone outside of the protected class, was treated less favorably than a similarly-situated individual outside his protected class, or that other circumstances exist that support an inference of discrimination. *See, e.g.*, *Blizzard v. Marion Tech. College*, 698 F.3d 275, 283 (6th Cir. 2012) (listing "circumstances that support an inference of discrimination" as the final factor); *Geiger v. Tower Auto.*, 579 F.3d 614, 622–23 (6th Cir. 2009) (listing "he was replaced by someone outside of the protected class" as the final factor).

Once a plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to provide a legitimate nondiscriminatory reason for the termination. Once established, the plaintiff must rebut the employer's stated reason by introducing evidence of

12

pretext. "A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Blizzard*, 698 F.3d at 285 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)). The plaintiff must "produce sufficient evidence from which the fact finder could reasonably infer that the asserted unlawful discrimination or retaliation was the real reason." *Bailey v. Oakwood Healthcare, Inc.*, 732 F. App'x 360, 362 (6th Cir. 2018); *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012).

In this case, it is undisputed that Miller was a member of the protected class, that he was otherwise qualified for the position, and that he was terminated. To establish the fourth prong of the *prima facie* case, Miller alleges: (1) the three existing employees among whom his duties were divided range in age from 33 to 45 years of age; (2) PPSI President, Gilmartin, regularly referred to Miller as "Old Pete" during his employment; and (3) Gilmartin told Miller he initially resisted hiring him because of his age. (Doc. 34 at PageID 461–63.) The fact that PPSI redistributed Miller's duties among existing employees does not support an inference of age discrimination, although the age-related comments may. However, the Court need not determine whether Plaintiff has established a *prima facie* case of age discrimination because, as explained below, he has failed to offer sufficient evidence of pretext.

Assuming that Miller has established a *prima facie* case, the burden shifts to Defendants to articulate a legitimate nondiscriminatory reason for Miller's termination. In this case, Marr made a business decision to eliminate the Director of Sales position and terminate Miller. (Marr

Dec., Doc. 17-2 at PageID 156.) Miller's sales territory included Maryland, the District of Columbia, New Jersey, Pennsylvania and New York. Marr determined it was "less costly to service this geographic area from [the] Company's New York office than Miller's home office in Southern Ohio," resulting in a savings of hundreds of thousands of dollars. (*Id.*)

As the Defendants produced evidence of a legitimate nondiscriminatory reason for the termination, Miller must identify sufficient evidence from which the fact finder could reasonably infer that age discrimination was the true reason. He has failed to do so. Plaintiff has not identified similarly-situated younger people who were treated more favorably than he was. Marr states that he had been considering eliminating Miller's position since at least August 2017, and he—not Gilmartin—made the decision to do so. (*Id.*) Thus, the person who allegedly made ageist remarks, Gilmartin, was not the decision maker in eliminating Miller's position. In addition, Miller never complained to Marr or anyone else at PPSI that anyone ever made age-related comments to or about him.[2] (*Id.* at PageID 158.) Finally, there is no evidence that PPSI hired a younger replacement salesperson or any other employees at all. Therefore, the Court cannot conclude that Defendants' stated business reason for Miller's termination is pretextual. Accordingly, the Defendants' motion for summary judgment on Plaintiff's age discrimination claim must be granted.[3]

---

[2] Defendants allege that they are entitled to a "same actor inference" as adopted in *Buhrmaster v. Overnite Transportation Co.*, 61 F.3d 461 (6th Cir. 1995) because Marr both hired and fired Miller so it is unlikely that age-related animus existed at firing but not at hiring. (Doc. 35 at PageID 479.) Although a fact finder may choose to draw such an inference, the Court declines to do so on summary judgment.

[3] The Court previously dismissed Plaintiff's claim for unjust enrichment. (Doc. 10.) Because the Court has concluded that Defendants are entitled to summary judgment on Plaintiff's breach of contract claims, Plaintiff's bad faith breach of contract claim also must fail.

### D. Defendants' Motion for Summary Judgment on Counterclaim Counts I and IV

The Defendants allege that Plaintiff breached his contractual duty of good faith and fair dealing (Count I) and his common law duty of loyalty (Count IV) to PPSI by wiping data from his company computer and cell phone before returning them to PPSI after his termination. (Doc. 2 at PageID 28–31.) Defendants have moved for summary judgment as to liability on those counterclaims. (Doc. 17.)

Plaintiff testified that he called PPSI's computer personnel in New York, but he did not receive a return call so he decided to have Best Buy complete needed repairs while the computer was still under warranty. (Miller Dep., Doc. 26 at PageID at 271.) Plaintiff further testified that he removed only personal numbers and photos from his cell phone, that Best Buy personnel wiped the computer in the course of performing the repairs, and that he removed only his personal copy of commercial software from the computer. (*Id.* at PageID 268–72.)

Defendants offered evidence that Best Buy personnel deny removing data from the computer. (Greene Dep., Doc. 29 at PageID 424; Tak Dep., Doc. 28 at PageID 406.) In addition, Defendants filed the affidavit of Olga Nagdaseva from Digital Forensics Corp. who examined Miller's computer and determined that "the hard drive was most likely wiped on or around 02/08/2017." (Nagdaseva Dec., Doc. 18-1 at PageID 161.) Best Buy did not have the computer in its possession on February 8, 2017. (Greene Dep., Doc. 29 at PageID 424.)

These differing narratives create genuine issues of material fact for the jury. Accordingly, Defendant's Motion for Summary Judgment as to liability on Counterclaim Counts I and IV must be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 17) is **GRANTED** on Plaintiff's remaining claims but **DENIED** as to Defendants' counterclaims. Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. 31) is **DENIED**. A Final Pretrial Conference was previously scheduled for **Friday, November 2, 2018 at 10:00 a.m.** As Plaintiff's claims have now been decided, the Final Pretrial Conference will proceed only as to Defendants' counterclaims unless the parties are able to resolve them extra-judicially.

**IT IS SO ORDERED**.

Dated: October 9, 2018           S/Susan J. Dlott_____
                                        Judge Susan J. Dlott
                                        United States District Court